EDWARD HYMAN CO. v. UNITED STATES (No. 5182)*

*C.A.D. 857.

United States Court of Customs and Patent Appeals, May 6, 1965

*Stein & Shostak (Marjorie M. Shostak* and *S. Richard Shostak,* of counsel) for appellant.
*John W. Douglas,* Assistant Attorney General, *Andrew P. Vance,* Chief, Customs Section, *Charles P. Deem,* for the United States.

[Oral argument April 6, 1965, by Mr. Shostak and Mr. Deem]

Before RICH, Acting Chief Judge, and MARTIN, SMITH, and ALMOND, Jr., Associate Judges

RICH, Judge, delivered the opinion of the court:

This appeal is from the judgment of the United States Customs Court, Second Division (C.D. 2450), overruling the importer's protest to the classification of unbleached cotton wiping cloths, imported from Hong Kong, 18″ x 17½″ in size, having a selvage on one edge and hemmed by overcasting on the other three edges. The fabric is described as "Osnaburg."

The collector classified the merchandise as towels under paragraph 911(a) and the importer claims classification as wiping rags under paragraph 922 or, alternatively, as mop cloths under paragraph 911(b).

Paragraph 911(a) of the Tariff Act of 1930, as modified by the Japanese Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 90 Treas. Dec. 235, 250, T.D. 53865, is, in part, as follows:

> Towels, other than pile fabrics, wholly or in chief value of cotton, whether in the piece or otherwise, and whether or not Jacquard-figured_ 20% ad val.

Paragraph 922, Tariff Act of 1930, as modified by said Japanese Protocol, is as follows:

> Rags, including wiping rags, wholly or in chief value of cotton, except rags chiefly used in paper-making_____ 2¢ per lb.

Paragraph 911(b), Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, 189, T.D. 52739, is, in part, as follows:

> Polishing cloths, dust cloths, and mop cloths, wholly or in chief value of cotton, not made of pile fabrics_____ 12½% ad val.

The record consists of the testimony of six witnesses called by the importer and the following exhibits: a sample of the imported cloths; a specimen of a typical "rag" which is obviously a washed remnant of a used white cotton garment; a bundle of dark blue, laundered, wiping cloths illustrative of the condition of cloths like the imported cloths after use; and a common type of white cotton hand towel, not pile fabric, about 18″ x 30″ with selvages on the two long edges and hemmed at the two ends.

The Customs Court fairly summarized the testimony of the witnesses as follows:

Merchandise of the instant type, which is designated variously as wiping rags, wiping towels, shop towels, and wiping cloths, and has been so termed since prior to 1930, is used in such establishments as service stations, garages, automobile agencies, aircraft plants, electrical firms, printing companies, paint shops, and the like, for the purpose of wiping machine parts and cleaning away grease and oil. After use, the cloths are picked up for laundering, subjected to a single process washing cycle, with a caustic cleaning compound, and then tinted or dyed blue, red, or orange, so as to cover over or obscure any remaining stains. The cloths, after drying, are folded in bundles of 10, as illustrated by plaintiff's collective exhibit 3, packaged into bundles of 100, and redistributed to the trade. On an average, such cloths will withstand 13 to 20 washings before falling apart.

The witnesses were in agreement that the definitions of the word "towel," as given in Webster's New International Dictionary and Funk & Wagnalls New Standard Dictionary, correctly expressed their understanding of the common meaning of that term. The definitions read to the witnesses were as follows:

A cloth used for wiping, especially one used for drying anything wet; as a bath or dish towel. [Webster's New International Dictionary.]

A cloth, usually of linen, for drying anything by wiping—especially after washing it; as a bath-towel; dish-towel. [Funk & Wagnalls New Standard Dictonary.]

They, nevertheless, were of opinion that the articles at bar did not fall within those definitions, for the reason that they differ in material, size, and texture; are not put to the use of wiping parts of the body or dishes after washing, as are towels; are subjected to entirely different washing procedures; and differ substantially in rental value, the wiping cloths renting for 2 cents a piece; hand towels, of the type introduced into evidence as plaintiff's exhibit 2, for 8 cents a piece.

The decision below was based on the usual presumption of correctness of the collector's classification, the plaintiff's dual burden to show it was wrong and that a claimed classification is right, and the determination that the imports were not "wiping rags" under paragraph 922 because they are not "rags" and not polishing cloths, dust cloths or mop cloths, apparently because not used for polishing, dusting, or mopping. The lower court held that since plaintiff had not succeeded in proving that either of *its* claimed classifications was the correct one, it is immaterial whether they are also *not* towels, as classified. In other words, unless the importer can establish one of

its claimed classifications are correct, the collector's classification must stand whether or not it is correct.

To prevent chaos in this opinion, we shall refer to the imported merchandise and other articles of like nature, made of new material, as *wiping cloths*, though they are popularly known by other names, including "wiping rags." We shall use the term "rag" exclusively to refer to pieces of cloth derived from used or worn out clothing and other cloth articles.

We shall first consider the lower court's conclusion that the imports are not "wiping rags" within the meaning of that term in paragraph 822, contrary to appellant's principal contention. The gist of the lower court's rationale is that the imported wiping cloths obviously are not rags and the use of the adjective "wiping" imparts no special meaning to the term "rags." Though it did not consider the term "wiping rags" ambiguous, it reviewed all references to that provision in the legislative history and concluded that Congress did not intend that term to refer to wiping cloths.

Appellant points to the same legislative history to support the opposite conclusion. It consists of the following: Hearings before a Subcommittee of the Committee on Finance United States Senate, on H.R. 2667, 71st Cong., 1st Sess., June 1929, Vol. IX, pages 36–37, 42–45, relating to Schedule 9, Cotton Manufactures, and Vol. XV on Schedule 15, Sundries, testimony on Par. 1555 of H.R. 2667 under the heading "COTTON WIPING RAGS," pages 928–949, 960–961. The latter section of the hearings includes 8 prepared statements or briefs on behalf of the rag industry and the cotton manufacturing industry, the former asking freedom from duty on imported rags and the latter asking for higher duty. Another item is Senate Report No. 37 to accompany H.R. 2667, item at page 33 on paragraph 922, hereinafter quoted.

The Government looks to the same legislative history to support its position, adding excerpts from proceedings on the floor of the Senate on March 3 and 21, 1930, reported at Cong. Rec., Vol. 72, Part 5, pages 4654, 5796–5801, and Part 6, page 5835; also Hearings before the Committee on Ways and Means, House of Representatives, Vol. XIV, pages 8024–8029, and Vol. XV, pages 9146–9151.

The general picture which emerges from this history is that the House bill contained a paragraph 1555 in which was the provision, "Cotton wiping rags, 2 cents per pound." In the Senate hearings on the House bill, before two different subcommittees handling Schedule 9 and Schedule 15, the rag industry opposed this provision, pointing out that imported rags were used both as wipers and as raw material in the paper industry, that the paper-making rags had always been free of duty, and that as to rags big enough to be used for wiping it was impossible to distinguish a wiping rag from a rag going to

paper manufacturers, the latter demanding a certain quantity of such large rags. They asked to have the 2-cent proposed duty removed or at least some clarification of language so that wiping rags and rags for paper manufacture could be distinguished. While there was much discussion of the impossibility or impracticability of doing this and submission of the problem to the Treasury Department experts, that problem never seems to have been solved, as may be seen from the language finally adopted in paragraph 922, "the best language the Treasury Department could suggest." (Cong. Rec., Vol. 72, Part 6, p. 5835.) The cotton manufacturers, on the other hand, sent witnesses to ask for a duty of 4¢ instead of 2¢ for the dual purpose of protecting the manufacturers of cotton waste, used for machinery wiping, and a then budding domestic industry in the manufacture of wiping cloths such as those imported here, which were not at that time being imported. The waste business in particular was being interfered with by the importation of wiping rags from Japan in large quantities. The wiping cloth industry was then entirely domestic, no mention being made of importation of wiping cloths, as distinguished from wiping rags. While there was a big price differential between wiping cloths and wiping rags, there was nevertheless competition because wiping rags were sold, used, and discarded whereas the wiping cloth business grew on the basis of reuse of the cloths which were subjected to repeated laundering with suitably strong caustic washing compositions until the cloths were worn out. This business evolved into a specialized industrial "linen" service in metropolitan areas with regular pick-up and delivery routes. Large users of wiping cloths, apparently, would sometimes operate their own laundries.

Throughout the record made at the Senate hearings, the witnesses and their prepared statements exhibit a perfectly clear understanding of the difference between American-made wiping cloths and competing Japanese wiping rags, though there was an occasional lapsus linguae. One such appears to have crept into the Senate Report, No. 37, much relied on by appellant, where the following appears:

PARAGRAPH 922

The provision for "*Rags* wholly or in chief value of cotton, except those chiefly used in paper-making" cancels the provision for "Cotton wiping *rags*" in paragraph 1555 of the House bill. These cotton rags are of low value, and the increase in the duty from 2 to 3 cents a pound tends to protect domestic wiping *rags* made from specially woven fabrics and also the domestic cotton-yarn waste (heretofore largely employed for wiping machinery, etc.), which has been increasingly supplanted by imported *rags* from Japan. [Our emphasis.]

There are five references to rags in that paragraph and it will be seen that all but the fourth refer to rags, whereas the fourth refers to articles

"made from specially woven fabrics * * *". If this paragraph of the report is viewed against the background of all the testimony out of which it emerged, it is clear that the author of the paragraph, in speaking of "domestic wiping rags," was referring to what all of the witnesses denominated "wiping cloths." This is perhaps the strongest support for appellant's contention that the statutory reference to "wiping rags" should be construed to include the imported wiping cloths. On analysis, however, it would appear that reliance is being placed on an obvious inadvertence. It is clear to us, as it was to the lower court, that ▮ Congress was fully mindful of the difference between wiping cloths and wiping rags and that in the statutory language finally adopted in paragraph 922, wherein the phrase "including wiping rags" was inserted at the suggestion of the Treasury Department in an endeavor to distinguish rags used for wiping from rags used in making paper, its purpose was to refer to a species of rag and not to a *wiping cloth* of newly manufactured material. Considering all factors, we see no error in the decision below denying to appellant classification under paragraph 922 as "wiping rags."

We will now consider the alternative claim to classification under paragraph 911(b) as "mop cloths," the only contention made on appeal with respect to classification under 911(b). In all of the expert testimony adduced by appellant, there is no evidence that the imported wiping cloths are ever referred to as mop cloths or ever used in an operation commonly known as mopping or in connection with mops. Neither do they fall within the paragraph of the 1929 Summary of Tariff Information (appearing in Schedule 9 at p. 1578), referring to paragraph 910 of the Tariff Act of 1922, cited by both parties and the lower court, reading:

Polishing cloths and dust cloths are small squares of napped cotton cloth, usually flannel, used in the household for polishing and dusting furniture or other articles; they are also used in polishing automobile bodies, harness, etc. Polishing cloths made of pile fabrics, such as velveteen, are dutiable under paragraph 910 [Tariff Act of 1922]. Mop cloths are used for scrubbing and are usually either plain or leno woven; the filling is usually of cotton waste, jute, or other cheap material.

Appellant relies on a statement in the 1948 Summaries of Tariff Information (Schedule 9 at p. 207), reading:

Wipers manufactured from cloth made principally of cotton waste and cut into squares and hemmed or overcast are dutiable as "polishing cloths, dust cloths, and mop cloths" under paragraph 911(b).

We agree with the court below that the latter statement is entitled to little weight for the reasons stated in our opinion in *Dodge & Olcott, Inc.* v. *United States*, 45 CCPA 113, C.A.D. 683. We agree with the holding that the imports are not mop cloths.

As did the Customs Court, having found that appellant has not established either of the classifications sought as the proper one, we find it unnecessary to consider whether the imports are or are not "towels" within the meaning of paragraph 911(a). We express no opinion on that question.

The judgment of the Customs Court is *affirmed.*